**Walter A. KIRCHNER, Appellant,**

**v.**

**Jacquelyn C. KIRCHNER, Appellee.**

Court of Appeals of Kentucky.

April 2, 1971.

Garland R. Hubbard, Louisville, for appellant.

Sidney Hanish, Louisville, for appellee.

PALMORE, Judge.

This is a proceeding by the mother of minor children against the father for alleged arrearages in child support payments and for counsel fees. Both parties appeal from the chancellor's judgment.

Mrs. Kirchner was granted a divorce from Dr. Kirchner on April 23, 1959. A settlement agreement dated April 10, 1959, was made a part of the judgment. Among other things, it gave custody of four infant daughters to the mother and provided that Dr. Kirchner would pay her $700 per month as alimony until her death or remarriage. Actually these payments covered both alimony and child support but were called alimony so that Dr. Kirchner could take them as income tax deductions and Mrs. Kirchner could claim exemptions for the children.

The settlement agreement made no provision for support of the children in event of Mrs. Kirchner's remarriage, nor did it call for a reduction in the monthly payments as the children reach maturity. However, the parties thereafter signed two supplemental agreements, which were as follows:

1. An instrument dated April 11, 1959, providing "that in the event of the wife's death, the husband shall pay the sum of $150.00 per month to each of the then surviving minor children for their maintenance, comfort and support."

2. An instrument dated August 5, 1959, which was otherwise identical to the April 11 supplement except that the words "remarriage or death" were substituted for the word "death."

Neither of the supplemental agreements was made a part of the record or given judicial sanction at the time of its execution.

Mrs. Kirchner remarried on May 12, 1966. Meanwhile, in 1964, she instituted proceedings against Dr. Kirchner for unpaid alimony in the sum of $4,150 and he moved for a reduction in the monthly amount payable under the settlement agreement. The latter motion was never acted upon. Mrs. Kirchner eventually got a judgment for her $4,150 and Dr. Kirchner satisfied it. While this controversy was in process the parties came to an agreement permitting Dr. Kirchner to reduce the alimony payments to $550 per month during the last six months of 1964 and $600 per month for the year 1965, with the understanding that he would resume payment of $700 per month at the beginning of 1966.

■ This arrangement for a temporary reduction in the amount of alimony payments was made without any written agreement as to whether Dr. Kirchner would still owe, and therefore have to pay at some future time, the difference of $2,100 between the reduced payments actually made and the $700 per month payable under the terms of the settlement agreement. Mrs. Kirchner maintains that there was no agreement to forgive the difference and

that it is now payable. The truth may be that this issue was left in limbo and that the parties really did not reach a meeting of the minds. However, citing the fact that between 1966 and 1969 Mrs. Kirchner made numerous motions for child support without mention of this $2,100 now alleged to have been due and unpaid all during that period, the chancellor found as a fact that the parties expressly agreed to reduce the alimony due in 1964 and 1965. Whether it was express or was fairly inferable from the circumstances, that such an understanding existed is a factual conclusion we are not disposed to hold clearly erroneous. Cf. Reid v. Reid, Ky., 300 S.W.2d 225 (1957).

For more than a year following Mrs. Kirchner's remarriage Dr. Kirchner made payments to her on the basis of $150 per month for each of the three daughters then under the age of 18. He discontinued them after July of 1967 and made no further payments until Mrs. Kirchner began the current phase of this proceeding in 1969. The issues now are whether (1) Dr. Kirchner is bound by the supplemental agreement of August 5, 1959, and therefore must make up what he has failed to pay since July of 1967, (2) the age of majority for the children is 18 or 21, and (3) Mrs. Kirchner is entitled to recover her counsel fees. The chancellor ruled in Mrs. Kirchner's favor on all these issues.

Dr. Kirchner advances a variety of theories in support of the position that he does not owe anything to his former wife by virtue of the August 5, 1959, supplemental agreement and that she cannot recover for past child maintenance in the absence of a preexisting court order fixing the amount of his obligation in that respect. One is that there was no consideration for the supplemental agreement. We find it strange that he should make such an argument while at the same time contending, successfully, that the "forgiveness" of a portion of the $700 alimony payments due in 1964 and 1965 is binding without consideration. It is said also that the supplemental agreement was to be contingent upon Mrs. Kirchner's marrying one C. F. Smith, which she did not do. As the chancellor commented, however, Dr. Kirchner "apparently did not take this argument very seriously himself until 1967 because he paid $150 per month per child for one year after the remarriage of his wife to a person other than Mr. Smith."

▮▮▮ Whether an award for child support or for an increase in child support may be made retroactively is a question we need not consider. It could arise only with respect to a period of time during which there was no enforceable obligation for the fixed amount ultimately determined to be proper. Here there was a subsisting contract fixing the amount at $150 per child. We do not intend to thrash around in a thicket of legalistic theories about contracts and consideration. When the divorced parents of minor children voluntarily sign an agreement relating to the support of the children, it is good unless disaffirmed or modified by the court. It is enough consideration that for the time being the problem is kept out of court.

That the supplemental agreement was not sacramentized by a court order does not preclude its efficacy. "It is not illegal for parents to contract with each other respecting the custody and maintenance of the child, and the contract will be enforced between the contracting parties so long as it is in the interest of the child." Gothard v. Lewis, 235 Ky. 117, 29 S.W.2d 590, 591 (1930).

▮▮▮ The duration of Dr. Kirchner's obligation under the supplemental agreement was established by its reference to the "surviving minor children." He agreed to pay $150 for each child so long as that child lived *and remained* a "minor." In 1959 a minor was a person under the age of 21. Hence that was the age contemplated by the parties, and the subsequent enactment reducing the statutory age of majority to 18 did not affect the terms of the agreement. Collins v. Collins, Ky.,

**302**

418 S.W.2d 739 (1967); Wilcox v. Wilcox, Ky., 406 S.W.2d 152 (1966).

Proceedings for the recovery of delinquent child support payments are for the benefit of the child or children, and the mother is entitled to a reasonable fee for her attorney's services. See Thielmeier v. Thielmeier, Ky., 420 S.W.2d 557, 559 (1967). Dr. Kirchner seeks to distinguish *Thielmeier* on the basis that it involved the collection of payments fixed by court order rather than by an agreement of the parties, but as we see it the principle is the same. It is unfortunate that there has been such a barrage of unnecessary legal activity in this case, but we can no more say that Mrs. Kirchner is to blame for it than we could say that it has been occasioned by Dr. Kirchner's intransigence in resisting it.

The judgment is affirmed on the appeal and cross appeal.

All concur.